**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ALEXANDER YIANNOPOULOS | ) | **Civil Action** |
| | ) | **File No. 2:25-cv-02556** |
| **Plaintiff,** | ) | |
| | ) | |
| versus | ) | **Judge Darrel James Papillion** |
| | ) | **Section: "P"** |
| DANIEL ARNOLD | ) | |
| | ) | **Magistrate Judge Karen Wells Roby** |
| **Defendant.** | ) | **Division: 4** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |

### DEFENDANT DANIEL ARNOLD'S AMENDED ANSWER
### TO PETITION AND COUNTERCLAIM FOR DAMAGES

Defendant, Daniel Arnold ("Defendant"), through undersigned counsel and pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), respectfully submits this Amended Answer to Plaintiff's Petition ("Petition") and Counterclaim for Damages against Plaintiff Alexander Yiannopoulos ("Plaintiff," also referred to in the Petition as "Petitioner").

### Paragraph 1: Petitioner/Protected Person(s)

Defendant admits Plaintiff filed the Petition on his own behalf.

### Paragraph 2: Protected Person(s) Address

Defendant denies Plaintiff's current address is 3724 Laurel St., New Orleans, LA 70115 for lack of sufficient information to justify a belief therein.

### Paragraph 3: Special Requests

Paragraph 3 of the Petition is blank and does not require a response. To the extent a response is deemed required, Defendant denies the allegations in Paragraph 3.

### Paragraph 4: Defendant Address

Defendant admits his name is Daniel Arnold and that he resides in Cook County, Illinois, but denies the remaining allegations in Paragraph 4 of the Petition.

1

### Paragraph 5: Venue

Defendant admits Plaintiff's allegation in Paragraph 5 of the Petition that Orleans Parish Civil District Court was a proper venue for this action.  Defendant specifically denies Plaintiff's allegation in Paragraph 5 that any stalking or sexual assault occurred in Orleans Parish – or anywhere else – or that Defendant in any way engaged in any stalking or sexual assault.  Defendant admits, on information and belief, that Plaintiff resides in Orleans Parish.  To the extent Paragraph 5 alleges, suggests, implies, and/or infers that Defendant committed any wrongdoing, Defendant specifically denies any wrongdoing.

### Paragraph 6: Relationship

Defendant admits the allegation in Paragraph 6 of the Petition that Defendant is "an acquaintance of or stranger/unknown" to Plaintiff.  To the extent Paragraph 6 alleges, suggests, implies, and/or infers that Defendant committed any wrongdoing, Defendant specifically denies any wrongdoing.

### Paragraph 7: Description of stalking/sexual assault

a.  **Stalking**

Defendant denies all allegations in Paragraph 7 of the Petition.

Defendant denies the allegation in Paragraph 7 of the Petition that Defendant has intentionally and repeatedly engaged in any behavior which caused Plaintiff to feel alarmed or to suffer emotional distress.

Defendant denies the allegation in Paragraph 7 of an uninvited presence at Plaintiff's workplace.

Defendant denies the allegation in Paragraph 7 that Defendant intentionally and repeatedly made or sent any telephone calls, texts, emails, or other electronic communications to Plaintiff.

Defendant denies the allegation in Paragraph 7 that Defendant intentionally and repeatedly sent messages via a third party, letters, pictures, or public posts to social media concerning Plaintiff.

Defendant denies the allegation in Paragraph 7 that Defendant intentionally and repeatedly implied or threatened Plaintiff with bodily injury.

Defendant denies the allegation in Paragraph 7 that Defendant intentionally and repeatedly implied or threatened Plaintiff's life.

Defendant denies the allegation in Paragraph 7 that Defendant intentionally and repeatedly stalked, harmed, or threatened to harm Plaintiff, a member of Plaintiff's family, or any acquaintance of Plaintiff.

**b. Sexual assault**

Section b of Paragraph 7 of the Petition is blank and therefore does not require a response. To the extent a response is deemed required, Defendant denies any allegations in Section b of Paragraph 7. To the extent Section b of Paragraph 7 alleges, suggests, implies, and/or infers that Defendant committed any wrongdoing, Defendant specifically denies any wrongdoing.

**c. The facts and circumstances of stalking or sexual assault are as follows:**

Defendant denies all allegations in Section c of Paragraph 7 of the Petition.

Defendant denies the allegation in Section c of Paragraph 7 of the Petition of his involvement in any incident of stalking occurring on or about November 18, 2025, or at any other time.

Defendant denies the allegation in Section c of Paragraph 7 that he is a professional rival of Plaintiff who escalated a 15-year academic dispute and political disagreement into a criminal campaign of cyberstalking.

3

Defendant denies the allegation in Section c of Paragraph 7 that he created the alias "Mihail Shevchenko" on Academia.edu to defame Plaintiff's employment. Defendant specifically denies that he ever created or used the alias "Mihail Shevchenko" on Academia.edu or anywhere else.

Defendant denies the allegation in Section c of Paragraph 7 that he deleted the "Mihail Shevchenko" account and denies the allegation that Plaintiff "exposed his identity."

Defendant denies the allegation in Section c of Paragraph 7 that he posted a veiled threat of home invasion on X/Twitter accompanied by an image of the Democrat politician Jay Jones on November 5, 2025, or at any other time.

Defendant denies the allegation in Section c of Paragraph 7 that he is a Democrat political activist and organizer or that Defendant is aware of any political affiliation of Plaintiff.

Defendant denies the allegation in Section c of Paragraph 7 that he created a new evasive "sock puppet" account on X/Twitter (@bananaxx1294120) to harass Plaintiff. Defendant further denies any "previous aliases" Plaintiff allegedly exposed. Defendant specifically denies that he ever created or used X/Twitter (@bananaxx1294120) or any other X/Twitter account.

Defendant denies the allegation in Section c of Paragraph 7 that Plaintiff is subject to "ongoing danger."

**Past incidents:**

Defendant denies all allegations in the "Past incidents" portion in Section c of Paragraph 7 of the Petition.

Defendant denies the allegation in the "Past incidents" portion of Paragraph 7 of the Petition that Defendant has established a clear pattern of public ideation and violent threats that places Plaintiff in reasonable fear of serious bodily injury.

4

Defendant denies the allegation in the "Past incidents" portion of Paragraph 7 of the Petition that Defendant posted threats online on October 25, 2025, September 4th, 2025, July 2, 2025, or at any other time.

Defendant denies the allegation in the "Past incidents" portion of Paragraph 7 of the Petition that Defendant has repeatedly (or ever) published false accusations of criminal conduct as a tool of harassment.

Defendant denies the allegation in the "Past incidents" portion of Paragraph 7 of the Petition that Defendant posted false accusations of criminal conduct online on October 17, 2025, October 29, 2025, or at any other time.

Defendant denies the allegation in the "Past incidents" portion of Paragraph 7 of the Petition that Plaintiff has "full forensic evidence of identity and conduct."

Defendant specifically denies he ever communicated with or about Plaintiff on any social media platform at any time.

**Paragraph 8: Requests for relief**

Defendant denies the allegations in Paragraph 8 on the grounds that Plaintiff is not entitled to any *ex parte* Temporary Restraining Order. Defendant denies all allegations of abuse, harassment, stalking, or threatening Plaintiff, and all other allegations of wrongdoing. Because Defendant has not engaged in any of the activity sought to be restrained, there is no need for an order prohibiting such activity or prohibiting Defendant from going within one hundred (100) yards of Plaintiff's residence or for any other order. To the extent Paragraph 8 alleges, suggests, implies, and/or infers that Defendant committed any wrongdoing, Defendant specifically denies any wrongdoing.

**Paragraph 9: Other Requests**

Defendant denies the allegations in Paragraph 9 of the Petition on the grounds that Plaintiff is not entitled to any type of protective order and on the grounds that Plaintiff is not entitled to any order requiring Defendant to seek professional counseling, to submit to a medical evaluation and/or a mental health evaluation, to pay costs of court in this matter, to pay attorney fees, to pay evaluation fees, and/or to pay expert witness fees.  To the extent Paragraph 9 alleges, suggests, implies, and/or infers that Defendant committed any wrongdoing, Defendant specifically denies any wrongdoing.

## PRAYER

Defendant denies the allegations in the Petition's unnumbered WHEREFORE paragraph on the grounds that Plaintiff is not entitled to any of the relief requested in the Petition's unnumbered WHEREFORE paragraph and its sub-parts.  To the extent the Prayer alleges, suggests, implies, and/or infers that Defendant committed any wrongdoing, Defendant specifically denies any wrongdoing.

## JURY DEMAND

Defendant demands a trial by jury on all issues so triable.

## DEFENSES AND AFFIRMATIVE DEFENSES

Without asserting any burden of proof that he would not otherwise bear, Defendant asserts the following defenses:[1]

1. This Court lacks personal jurisdiction over Defendant.

2. Plaintiff's Petition is not in the correct venue because it was filed in an inconvenient forum.

---

[1] Defendant asserts that he only bears the burden of proof on those matters identified as affirmative defenses in Rule 8(c) of the Federal Rules of Civil Procedure.

3. Plaintiff's Petition fails to state a cause of action as to one or more claims.

4. The claims of Plaintiff fail to the extent they are barred, in whole or in part, by the applicable statute of limitations and/or prescriptive period.

5. To the extent any attorney or other person who is admitted to conduct cases in any court of the United States or any Territory becomes involved in Plaintiff's prosecution of this case and in doing so unreasonably and vexatiously multiplies this proceeding, Defendant asserts his right under 28 U.S.C. § 1927 to costs, expenses, and attorneys' fees.

6. Plaintiff cannot prove Defendant published any of the allegedly defamatory statements about Plaintiff.

7. Plaintiff cannot prove his entitlement to any injunctive relief against Defendant.

8. Plaintiff cannot prove he is entitled to any relief and/or recovery from Defendant under La. R.S. 46:2171.

9. The Petition, including each and every cause of action alleged therein, is barred, or any damages should be reduced, in whole or in part, because principles of equity and Louisiana Civil Code art. 2323 should preclude and/or limit Plaintiff from obtaining relief based on the causes of action upon which she seeks relief as a result of Plaintiff's own acts, omissions, representations, and/or courses of conduct.

10. Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

11. Plaintiff's claims are barred in whole or in part by the doctrine of laches.

12. Defendant is entitled to any and all appropriate relief arising from Plaintiff's false Affirmation on page 6 of his Petition (R. Doc. 1-2, Page 6 of 58).

13. To the extent Louisiana's stalking statute is somehow deemed applicable to and enforceable against Defendant, any attempt to enforce it in any other U.S. jurisdiction should be denied on the grounds of vagueness.

14. Defendant expressly reserves his right to amend this Answer and his Defenses as permitted by the Federal Rules of Civil Procedure and the Rules and Orders of this Court.

## DEFENDANT DANIEL ARNOLD'S COUNTERCLAIM

1. Defendant realleges and incorporates his responses to the allegations in paragraphs 1 through 9 of the Petition and, assuming the position of Counterclaim-Plaintiff and pursuant to Rule 13 of the Federal Rules of Civil Procedure, pleads the following counterclaim against Counterclaim-Defendant Alexander Yiannopoulos.

### A. PARTIES, JURISDICTION, AND VENUE

2. Counterclaim-Plaintiff Daniel Arnold ("Counterclaim-Plaintiff" or "Prof. Arnold") is an adult individual residing in Cook County, Illinois.

3. Upon information and belief, Counterclaim-Defendant Alexander Yiannopoulos ("Counterclaim-Defendant" or "Yiannopoulos") is an adult individual residing in Orleans Parish, Louisiana.

4. This Court has subject matter jurisdiction over Counterclaim-Plaintiff's claims pursuant to 28 U.S.C. § 1367(a).

5. This Court is a proper venue for Counterclaim-Plaintiff's claim under 28 U.S.C. § 1391(b)(1) because Counterclaim-Defendant resides in this judicial district.

### B. RELEVANT FACTUAL BACKGROUND

6. Counterclaim-Plaintiff is the John Henry Barrows Professor of the Philosophy of Religions at the University of Chicago Divinity School. Prof. Arnold is a well regarded scholar

8

of Indian Buddhist philosophy who has worked for decades for one of the world's most renowned and prestigious institutions of higher learning. *See* https://divinity.uchicago.edu/directory/daniel-arnold.

7. Prof. Arnold is not a public official.

8. Counterclaim-Defendant is a private individual holding a Ph.D. who holds himself out as an "Independent Scholar" and who has developed an irrational obsession with and baseless vendetta against Prof. Arnold.

9. Counterclaim-Defendant wrote Prof. Arnold via email in 2023, requesting Prof. Arnold's comment on an academic paper by Yiannopoulos that was critical of previous scholarship by Prof. Arnold.

10. Prof. Arnold responded via email, offering constructive criticism, especially of the paper's strident rhetoric.

11. Responding via email to the aforementioned criticism, Yiannopoulos wrote a lengthy and strident reply attacking Prof. Arnold. Prof. Arnold declined to engage any further, and the one email he sent in 2023 – which is referenced above in Paragraph 10 – was the one and only written communication that Prof. Arnold has ever sent or directed to Yiannopoulos.

12. Upon information and belief, Yiannopoulos in 2025 began engaging in extensive online communications with unknown persons, including but not limited to communications on platforms such as X.com (formerly known as Twitter) and Academia.edu.

13. Without any reasonable basis or supporting evidence, Yiannopoulos falsely stated on multiple occasions that Prof. Arnold participated and continues to participate in these online communications.

14.     Yiannopoulos falsely stated Prof. Arnold has created anonymous online accounts to communicate with Yiannopoulos.

15.     Prof. Arnold has never created anonymous online accounts to communicate with Yiannopoulos.

16.     Prof. Arnold does not have and has never had a Twitter or X account.

17.     Prof. Arnold did not participate in these online communications and has not communicated with Yiannopoulos in any way whatsoever since the 2023 email correspondence described in paragraphs 9-11 of this Counterclaim.

18.     Prof. Arnold did not learn Yiannopoulos' online communications were even taking place until November 20, 2025, when the University of Chicago's office of legal counsel informed Prof. Arnold of Yiannopoulos' allegation that Prof. Arnold was behind those communications.

19.     In November 2025, Yiannopoulos began publishing false statements to third party individuals and professional organizations that Prof. Arnold is connected with in his capacity as the John Henry Barrows Professor of the Philosophy of Religions at the University of Chicago Divinity School.

20.     In his statements published to third parties, Yiannopoulos made false and harmful statements that by their very nature tend to harm the reputation of Prof. Arnold so as to deter others from associating or dealing with Prof. Arnold and that also have exposed Prof. Arnold to contempt or ridicule.  As such, Yiannopoulos statements are defamatory *per se*.

21.     In his statements published to third parties, Yiannopoulos falsely accused Prof. Arnold of criminal conduct.  Yiannopoulos falsely accused Prof. Arnold of stalking, harassment, and threats of impending danger to Yiannopoulos and his family.

**False Statements Published to American Academy of Religion Unit Leadership and Prof. Arnold's Professional Colleagues**

22. The American Academy of Religion ("AAR") is the largest professional association for the academic study of religion in the United States. AAR members primarily consist of university and college professors, independent scholars, secondary teachers, and students.

23. The AAR is Prof. Arnold's primary professional association.

24. Prof. Arnold regularly attends and participates in AAR events and conferences.

25. On November 18, 2025, Yiannopoulos emailed AAR unit-level leadership and falsely stated that Prof. Arnold engaged in "criminal harassment, cyberstalking, and spoliation of evidence."

26. Specifically, Yiannopoulos' November 18, 2025, email falsely stated Prof. Arnold had created "multiple pseudonymous accounts" to "harass" Yiannopoulos on "professional platforms and social media".

27. Yiannopoulos' November 18, 2025, email falsely stated Prof. Arnold is an "unstable, predatory" individual "attempting to destroy a junior scholar's career through anonymous abuse."

28. Yiannopoulos sent his November 18, 2025, email to a total of eight (8) separate recipients, including official AAR email accounts and individuals associated with Yale University, Brown University, Temple University, Eckerd University, and Princeton University, as well the Dutch institution Leiden University.

29. Yiannopoulos' November 18, 2025, email also falsely stated there was "active law enforcement involvement."

30. On November 20, 2025, Yiannopoulos sent a follow-up email to the same

11

recipients falsely stating that a Louisiana court had issued a Temporary Restraining Order and Order of Protection against Prof. Arnold.

31.    Yiannopoulos' November 20, 2025, email falsely stated, "The Court found sufficient grounds to restrain Prof. Arnold from contacting me or engaging in 'uninvited presence' at my workplace or professional environment," and that Prof. Arnold's presence in the same professional space as Yiannopoulos would "constitute a criminal violation of this Order." These false statements were intended by Yiannopoulos to convey the false impression to AAR leaders that Prof. Arnold would be in violation of a court order and would be committing a crime by attending a 2025 AAR meeting in Massachusetts that Yiannopoulos might attend.  Contrary to Yiannopoulos' false statement, the Honorable Lori Jupiter, Judge, Orleans Parish Civil District Court, actually **DENIED** each and every request by Yiannopoulos for injunctive relief against Prof. Arnold.  In denying Yiannopoulos' requests for injunctive relief against Prof. Arnold, Judge Jupiter specifically concluded that Yiannopoulos' "Allegations fail to meet the requirements of stalking to warrant a TRO."  R. Doc. 1-2, Pages 54 through 58.

32.    On November 21, 2025, Yiannopoulos forwarded the emails described in Paragraphs 25-31 to an expanded group of over thirty-five (35) new recipients, most of whose email addresses are associated with academic institutions in the United States and Europe, falsely stating Prof. Arnold was involved in a "years-long campaign of professional sabotage, cyberstalking, and harassment" directed towards Yiannopoulos.  Yiannopoulos also falsely stated that these actions were the subject of an "active criminal investigation."  Yiannopoulos falsely stated that Prof. Arnold's presence at an upcoming AAR conference would be "a crime (Contempt of Court)."  Yiannopoulos further falsely stated the AAR had "chosen to protect a predator" (referring to Prof. Arnold).

12

33.    Yiannopoulos also attached to both his November 18th and 21st emails a Google Docs link to a file containing social media communications at issue, referring to the materials as "the full forensic dossier and all supporting evidence."  The linked file, however, contained no "supporting evidence," only the false and baseless assertion that Prof. Arnold had written the relevant tweets and/or posts.  The materials in the link are substantially similar to online communications that Yiannopoulos attached to his Petition.  See R. Doc. 1-2, Pages 15 through 52.

### False Statements Published to the University of Chicago

34.    On October 5, 2025, Yiannopoulos sent an email to University of Chicago administrators, including Provost Katherine Baicker and Vice President and General Counsel Robert Hochman, making various false allegations of criminal conduct and other wrongdoing against Prof. Arnold.

35.    Yiannopoulos' October 5, 2025, email falsely accused Prof. Arnold of "gross professional misconduct," "a pattern of professional retaliation against me both personally and as a member of a protected class," "acts of illegal viewpoint discrimination and conspiracy against my constitutionally-protected rights to free speech and the free exercise of my religion," and "a more than decade-long pattern of personal and professional animus that renders Professor Arnold unfit for his academic and editorial duties."

36.    Yiannopoulos' October 5, 2025, email threatened a "federal lawsuit against Prof. Arnold for tortious interference, defamation, and referral to the federal Department of Justice for criminal conspiracy to deprive me of my constitutional rights under 18 U.S.C. § 241 with co-conspirators".

**False Statements Published To Broad Online Audiences**

37.     On January 6, 2026, on the X platform, Yiannopoulos published several statements to a broad public audience falsely stating, among other things, that a certain X account "is a sock puppet for a defendant in a federal racketeering lawsuit" (referring to Prof. Arnold) and that "Daniel Arnold is going to Prison for conspiracy against my First Amendment rights under 18 U.S.C. § 241".  Yiannopoulos also repeatedly made false statements online that social media account holders are Prof. Arnold.

38.     During 2025 and since January 6, 2026, Yiannopoulos published many more false statements about Prof. Arnold to a broad public audience on the X platform.

**Yiannopoulos' False Statements About Prof. Arnold Were Made in Bad Faith and With Actual Malice**

39.     Yiannopoulos has been unable to secure employment as an instructor in an institution of higher learning.

40.     Yiannopoulos baselessly blames Prof. Arnold for his career setbacks.

41.     Yiannopoulos' false statements about Prof. Arnold were not made in good faith but instead were part of Yiannopoulos' vengeful campaign to improve his own standing as an academic to the detriment of Prof. Arnold.

42.     Yiannopoulos' bad faith and actual malice are further evidenced by Yiannopoulos' targeting of one or more of Prof. Arnold's students.

**Prof. Arnold's Damage and Injury From Yiannopoulos' False Statements**

43.     Prof. Arnold has been subjected to ridicule and humiliation among his work colleagues, his academic peers, and a broad general public on social media as a result of Yiannopoulos' false statements.

44.     Yiannopoulos' false statements have diminished Prof. Arnold in the eyes of his

14

work colleagues, his academic peers, and a broad general public on social media.

45.    Yiannopoulos' false statements have caused Prof. Arnold to suffer significant emotional upset and distress.

46.    Unless Yiannopoulos' false statements about Prof. Arnold are appropriately addressed by this Court, they have the potential to harm Prof. Arnold's career.

## C.  CAUSE OF ACTION - DEFAMATION

47.    Counterclaim-Plaintiff Daniel Arnold incorporates the allegations in paragraphs 1 through 46 of this Counterclaim as if fully set forth herein.

48.    Counterclaim-Plaintiff Daniel Arnold is a private individual who brings this Counterclaim to remedy substantial reputational harm arising from Counterclaim-Defendant Yiannopoulos' false and defamatory publications.

49.    Yiannopoulos published statements about Prof. Arnold that were false and defamatory, including express statements that Prof. Arnold is guilty of crimes, harassment, cyberstalking, spoliation of evidence, criminal violation of a restraining order, conspiracy to violate federal rights under 18 U.S.C. § 241, and is a "predator."

50.    Yiannopoulos published his false and defamatory statements about Prof. Arnold to many third parties without the protection of any applicable privilege.

51.    Yiannopoulos published his false and defamatory statements about Prof. Arnold with malice and in bad faith, published them without regard for any proper scope, and acted in reckless disregard of the truth or falsity of his statements, including broad dissemination to the public and to third parties who had no interest in receiving Yiannopoulos' false statements.

15

52.     Yiannopoulos' statements constitute defamation *per se* because they expressly or implicitly accuse Plaintiff of criminal conduct or, by their very nature, tend to injure Prof. Arnold's personal and professional reputation.

53.     Yiannopoulos published his defamatory statements about Prof. Arnold either knowing they were false or with reckless disregard of their truth or falsity.

54.     In publishing his false and defamatory statements to third parties, Yiannopoulos was in a position to know whether his statements were false, yet he acted with reckless disregard to whether the statements were true or false.

55.     In publishing his statements to third parties, Yiannopoulos acted negligently in failing to ascertain whether the statements were true or false.

56.     As a direct and proximate result of Yiannopoulos's false publications, Prof. Arnold has incurred and continues to incur actual damages, including reputational harm among colleagues, professional organizations, and the broader academic community; humiliation; mental anguish; emotional distress; economic and professional damages; and other damages to be proven at trial.

57.     Prof. Arnold seeks punitive and exemplary damages based on Yiannopoulos' malice, bad faith, and reckless disregard for the truth or falsity of his statements, which are evidenced by the breadth, repetition, malicious, and accusatory nature of his false and defamatory publications.

### D.  JURY DEMAND

58.     Defendant and Counterclaim-Plaintiff Daniel Arnold demands a trial by jury on all issues so triable.

WHEREFORE, having answered Plaintiff Alexander Yiannopoulos' Petition and asserted his defenses, Defendant Daniel Arnold respectfully requests that this Court dismiss Plaintiff's Petition in its entirety, with prejudice, enter judgment in favor of Prof. Arnold, and also grant judgment in Prof. Arnold's favor on his Counterclaim, including awarding his requested monetary relief and any other relief this Court deems appropriate, including costs and attorneys' fees.

Respectfully submitted this 9th day of February, 2026.

<div style="margin-left:45%">

*/s/ Mark N. Mallery*

Mark N. Mallery, La. Bar No. 17666 (T.A.)
Michael C. Ledet, La. Bar No. 40430
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, LA  70139
Telephone: (504) 648-3840
Facsimile: (504) 648-3859
Email:  mark.mallery@ogletreedeakins.com
        michael.ledet@ogletreedeakins.com

**Attorneys for Defendant, Daniel Arnold**

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing has been served on the following

counsel of record via U.S. Mail, properly addressed and postage prepaid, as follows:

> Jeffrey S. Wittenbrink
> Wittenbrink Law Firm
> 331 St. Ferdinand Street
> Baron Rouge, LA  70802
> Email:  jwittenbrink@TheLawyerBR.com

This 9th day of February, 2026.

> /s/ Mark N. Mallery
> Mark N. Mallery

18

95222333.v1-OGLETREE