# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALEXANDER YIANNOPOULOS**, | Civil Action No. **2:25-cv-02556** |
| Plaintiff/Counterclaim-Defendant, | Judge **Darrel James Papillion** |
| | Section: "P" |
| v. | |
| | Magistrate Judge **Karen Wells Roby** |
| **DANIEL ARNOLD**, | Division: 4 |
| Defendant/Counterclaimant. | **AMENDED ANSWER TO COUNTERCLAIM** |

## AMENDED ANSWER TO COUNTERCLAIM

### (Filed as of Right Pursuant to Fed. R. Civ. P. 15(a)(1)(A))

NOW INTO COURT comes Plaintiff Alexander Yiannopoulos, as Counterclaim-Defendant, who submits this Amended Answer to Defendant Daniel Arnold's Counterclaim (Document 11) in this matter. This Amended Answer supersedes the original Answer to Counterclaim (Document 16, filed March 4, 2026) and is filed as of right within twenty-one days of service thereof, pursuant to Federal Rule of Civil Procedure 15(a)(1)(A).

1

# RESPONSES TO COUNTERCLAIM ALLEGATIONS

## Paragraph 1: Prefatory Paragraph

The allegations of Paragraph 1 are a reallegation of Defendant's general denials to the allegations of the Complaint (referred to in the Counterclaim as the "Petition"), and as such require no answer, except to admit that Defendant has initiated a Counterclaim.

## A. Parties, Jurisdiction, and Venue

**2.** Dr. Yiannopoulos admits that Counterclaim-Plaintiff Arnold is an adult individual residing in Cook County, Illinois.

**3.** Dr. Yiannopoulos admits that he is an adult individual residing in Orleans Parish, Louisiana.

**4.** Dr. Yiannopoulos admits that this Court has subject matter jurisdiction over Arnold's claims as Counterclaim-Plaintiff.

**5.** Dr. Yiannopoulos admits that this Court is a proper venue for Counterclaim-Plaintiff's claim under 28 U.S.C. § 1391(b)(1) because Dr. Yiannopoulos resides in this judicial district.

## B. Relevant Factual Background

**6.** Dr. Yiannopoulos admits the allegations of Paragraph 6 as a general proposition.

**7.** Dr. Yiannopoulos denies the allegations of Paragraph 7 for lack of information sufficient to sustain a belief therein. Further answering, Counterclaim-Defendant avers that Arnold is, at minimum, a *limited-purpose public figure* in the field of Buddhist philosophy by virtue

of his occupancy of the John Henry Barrows Chair at the University of Chicago Divinity School, his service on the advisory board of H-Buddhism, and his prominent role as a gatekeeper in the discipline of Buddhist Studies. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

**8.** The allegations of Paragraph 8 are denied as to the characterization of Dr. Yiannopoulos's concerns as "irrational" or his actions as a "baseless vendetta."

**9.** The allegations of Paragraph 9 are admitted.

**10.** The allegations of Paragraph 10 are denied as to the characterization of Arnold's criticism as "constructive."

**11.** The allegations of Paragraph 11 are denied. Dr. Yiannopoulos further avers that the extent and nature of Arnold's communications with Dr. Yiannopoulos are questions of fact to be determined at the trial of this matter.

**12.** The allegations of Paragraph 12 are denied. Dr. Yiannopoulos avers that he possesses forensic evidence—including linguistic analysis, behavioral correlations, and temporal patterns—establishing the identity of the operators of the accounts at issue, as set forth in the First Amended Complaint (Document 17) and the seventy-three exhibits attached thereto.

**13.** The allegations of Paragraph 13 are denied. Dr. Yiannopoulos avers that the statements he made regarding Arnold's participation in online communications are substantially true, as set forth in the First Amended Complaint (Document 17, filed March 9, 2026) and the seventy-three exhibits attached thereto.

**14.** The allegations of Paragraph 14 are denied.

**15.** The allegations of Paragraph 15 are denied.

**16.** The allegations of Paragraph 16 are denied. Counterclaim-Defendant notes that this categorical denial—that Counterclaimant "does not have and has never had a Twitter or

X account"—constitutes a verified pleading statement subject to the certification requirements of Federal Rule of Civil Procedure 11.

17. The allegations of Paragraph 17 are denied.

18. The allegations of Paragraph 18 are denied.

19. The allegations of Paragraph 19 are denied as written. Dr. Yiannopoulos avers that the statements he made to third parties referred to and relevant to the facts alleged in the Complaint are true.

20. The allegations of Paragraph 20 are denied. Dr. Yiannopoulos avers that his allegations against Arnold are true.

21. The allegations of Paragraph 21 are denied. Dr. Yiannopoulos avers that his allegations against Arnold are true.

## False Statements Published to AAR

22. The allegations of Paragraph 22 are admitted.

23. The allegations of Paragraph 23 are denied for lack of information sufficient to justify a belief therein.

24. The allegations of Paragraph 24 are denied for lack of information sufficient to justify a belief therein.

25. The allegations of Paragraph 25 are denied. Further, Dr. Yiannopoulos avers that the allegations of criminal harassment, cyberstalking, and spoliation of evidence are true, and the facts alleged supporting those charges are true. Further answering, the communications to AAR leadership were made in direct connection with a pending petition for protective order (Docket No. 2025-11072) and an active NOPD incident report (Incident No. K-16401-25, Exhibit A hereto), and are subject to qualified privilege as statements

4

made to parties with a legitimate interest in the subject matter.

**26.** The allegations of Paragraph 26 are denied. Further, Dr. Yiannopoulos avers that the allegations of fact cited therein are true.

**27.** The allegations of Paragraph 27 are denied. Further, the characterizations referred to therein—including "unstable" and "predatory"—constitute the opinion of Dr. Yiannopoulos based on disclosed facts, and are protected expression under the First Amendment. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990).

**28.** The allegations of Paragraph 28 are admitted.

**29.** The allegations of Paragraph 29 are denied. Further, Dr. Yiannopoulos avers that at the time of the November 18, 2025 email, he had actively engaged multiple law enforcement agencies in connection with Arnold's conduct, including: (a) filing a criminal referral with the FBI Detroit Field Office, physically delivered on October 14, 2025 (Exhibits B–C hereto); (b) submitting an electronic tip via tips.fbi.gov (Exhibit D hereto); (c) reporting the conduct to the University of Chicago Police Department; and (d) filing NOPD Incident Report No. K-16401-25 on November 18, 2025 (Exhibit A hereto). The statement regarding active law enforcement involvement was substantially true when made.

**30.** The allegations of Paragraph 30 are admitted insofar as Dr. Yiannopoulos sent the described email. Dr. Yiannopoulos acknowledges that the substantive injunctive provisions of the state court order were denied by Judge Jupiter. However, Dr. Yiannopoulos avers that (a) the court did issue an ex parte order to show cause, signed by Judge Jupiter, with the "Order issued ex parte" box checked; (b) the order form is captioned "Temporary Restraining Order" on the Louisiana Uniform Abuse Prevention Order; (c) Orders #19 and #20 were entered, requiring Arnold to show cause on costs, fees, and mandatory counseling/evaluation; (d) the order bears VAWA certification stating "THIS ORDER SHALL BE PRESUMED VALID AND ENFORCEABLE IN ALL 50 STATES"; and (e) court personnel at the Orleans Parish courthouse instructed Dr. Yiannopoulos to carry the or-

der on his person at all times. Dr. Yiannopoulos's characterization of this order reflected a good-faith misunderstanding of a complex judicial form by a pro se litigant, not actual malice.

**31.** The allegations of Paragraph 31 are admitted as to the date and contents of the email. Dr. Yiannopoulos incorporates his response to Paragraph 30. Further, Dr. Yiannopoulos avers that the Counterclaim's assertion that Judge Jupiter "actually DENIED each and every request by Yiannopoulos for injunctive relief" is itself misleading, as the court record (Document 5-1, Pages 71–76) reflects that Orders #19 and #20 were entered and a show cause hearing was set for December 29, 2025. Dr. Yiannopoulos further avers that the Petition for Protective Order was filed on the direct advice of the responding NOPD officer (Exhibit A, narrative: "Officer Hayes informed Mr. Yiannopoulos on how to get a protection order in place").

**32.** The allegations of Paragraph 32 are admitted insofar as Dr. Yiannopoulos forwarded the emails to an expanded group of recipients after no initial action was taken by the original recipients. The allegations are denied insofar as Dr. Yiannopoulos avers that (a) the statements regarding the actions of Arnold referred to in the email were truthful; (b) Dr. Yiannopoulos had actively engaged law enforcement agencies and the matter remained pending before each at the time of the communication; and (c) the statements regarding the court order reflected Dr. Yiannopoulos's good-faith understanding based on the factors described in the response to Paragraph 30.

## False Statements Published to the University of Chicago

**33.** The allegations of Paragraph 33 are admitted as to the attachments to the emails and their contents. The allegations that the supporting evidence provided by Dr. Yiannopoulos is false or baseless are denied.

**34.** The allegations of Paragraph 34 are admitted as to the existence, date, recipients, and

content of emails sent to individuals at the University of Chicago. The allegations that the information in the emails was false are denied.

**35.** The allegations of Paragraph 35 are admitted as to the existence, date, recipients, and content of emails sent to individuals at the University of Chicago. The allegations that the information in the emails was false are denied.

**36.** The allegations of Paragraph 36 are admitted as to the existence, date, recipients, and content of emails sent to individuals at the University of Chicago. The allegations that the information in the emails was false are denied.

## False Statements Published to Broad Online Audiences

**37.** The allegations of Paragraph 37 are admitted as to the existence, date, and content of statements on the X platform. The allegations that the statements were false are denied.

**38.** The allegations of Paragraph 38 are denied to the extent that the allegations therein aver that Dr. Yiannopoulos's statements were false.

## Bad Faith and Actual Malice

**39.** The allegations of Paragraph 39 are denied. Dr. Yiannopoulos is an instructor at the Samye Institute in Cooperstown, New York; the Director of the $A|\Omega\rangle$ Institute, a theoretical physics research venture; holds a book contract with Wisdom Publications; has a forthcoming paper in the proceedings of the Sixth International Dharmakīrti Conference (Austrian Academy of Sciences Press); has a peer-reviewed article forthcoming in *Agatheos: European Journal for the Philosophy of Religion*; and is a lifetime member of the International Association of Buddhist Studies.

**40.** The allegations of Paragraph 40 are denied. Dr. Yiannopoulos's allegations against Arnold are based in documented fact, as set forth in the First Amended Complaint (Doc-

7

ument 17, filed March 9, 2026) and the seventy-three exhibits attached thereto.

41. The allegations of Paragraph 41 are denied. Dr. Yiannopoulos specifically avers that his statements about Arnold are made in good faith and are substantially true.

42. The allegations of Paragraph 42 are denied. Dr. Yiannopoulos specifically avers that his statements about Arnold are made in good faith and are substantially true.

## Damage and Injury

43. The allegations of Paragraph 43 are denied for lack of information sufficient to sustain a belief therein.

44. The allegations of Paragraph 44 are denied for lack of information sufficient to sustain a belief therein.

45. The allegations of Paragraph 45 are denied for lack of information sufficient to sustain a belief therein.

46. The allegations of Paragraph 46 are denied for lack of information sufficient to sustain a belief therein.

## Cause of Action—Defamation

47. The allegations of Paragraph 47 incorporate previous allegations of the Counterclaim, and have already been addressed.

48. The allegations of Paragraph 48 are denied. Counterclaimant Arnold is a limited-purpose public figure in the field of Buddhist philosophy, and the allegations made about him by Dr. Yiannopoulos are substantially true.

49. The allegations of Paragraph 49 are denied. Dr. Yiannopoulos specifically avers the truth of statements made about Arnold.

**50.** The allegations of Paragraph 50 are denied. Statements made in connection with the NOPD police report, the FBI criminal referral, and the Petition for Protection are absolutely privileged as statements made before or in connection with law enforcement and judicial proceedings. *See Wainwright v. Fontenot*, 774 So. 2d 70, 74 (La. 2000). Statements made to AAR leadership and the University of Chicago are subject to qualified privilege as statements made in connection with pending judicial proceedings to parties with a legitimate interest in the subject matter. *See Toomer v. Breaux*, 146 So. 2d 723 (La. App. 3d Cir. 1962). Dr. Yiannopoulos further avers that Arnold is a limited-purpose public figure, that the statements are substantially true, and that they were made without actual malice.

**51.** The allegations of Paragraph 51 are denied. Dr. Yiannopoulos further avers that the statements made to Arnold's professional association and employer were directed to parties with a legitimate interest in Arnold's conduct, and that the statements were true.

**52.** The allegations of Paragraph 52 are denied. The characterizations at issue—including "predator" and "unstable"—constitute protected opinion based on disclosed facts under the First Amendment. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). To the extent any statement constitutes a factual assertion, it is substantially true.

**53.** The allegations of Paragraph 53 are denied.

**54.** The allegations of Paragraph 54 are denied.

**55.** The allegations of Paragraph 55 are denied.

**56.** The allegations of Paragraph 56 are denied for lack of sufficient information to sustain a belief therein.

**57.** The allegations of Paragraph 57 are a request for relief and as such require no answer. To the extent that an answer is required, the allegations are denied.

**58.** The allegations of Paragraph 58 are a request for relief and as such require no answer.

9

## WHEREFORE Paragraph

Counterclaim-Defendant denies the allegations in the Counterclaim's unnumbered WHEREFORE paragraph on the grounds that Counterclaimant is not entitled to any of the relief requested therein. To the extent that the prayer alleges any wrongdoing by Dr. Yiannopoulos, Dr. Yiannopoulos specifically denies any wrongdoing.

## JURY DEMAND

Counterclaim-Defendant Dr. Yiannopoulos concurs in the request for a jury on issues triable to a jury. Dr. Yiannopoulos avers that a Protective Order under the provisions of Louisiana R.S. Title 46 may not be triable to a jury.

## DEFENSES AND AFFIRMATIVE DEFENSES

Without asserting any burden of proof that he would not otherwise bear, Counterclaim-Defendant Dr. Yiannopoulos asserts the following defenses:[1]

1. **Failure to State a Claim.** Counterclaimant fails to state a cause of action as to one or more claims.

2. **Sanctions Reservation.** To the extent that any attorney or other person admitted to conduct cases in any court of the United States or any Territory becomes involved in Counterclaimant's prosecution of his Counterclaim and in doing so unreasonably and vexatiously multiplies this proceeding, Counterclaim-Defendant asserts his right under 28 U.S.C. § 1927 to costs, expenses, and attorneys' fees.

---

[1]Counterclaim-Defendant asserts that he only bears the burden of proof on those matters identified as affirmative defenses in Rule 8(c) of the Federal Rules of Civil Procedure.

3. **Comparative Fault.** The Counterclaim, including each and every cause of action alleged therein, is barred or any damages should be reduced, in whole or in part, because principles of equity and Louisiana Civil Code article 2323 should preclude or limit Counterclaimant from obtaining relief as a result of Counterclaimant's own acts, omissions, representations, and/or courses of conduct.

4. **Unclean Hands.** Counterclaimant's claims are barred in whole or in part by the doctrine of unclean hands.

5. **Truth.** The statements identified in the Counterclaim are substantially true. Truth is a complete defense to defamation under Louisiana law. *See Costello v. Hardy*, 864 So. 2d 129 (La. 2004).

6. **No Fault.** Counterclaimant cannot establish fault within the meaning of Louisiana Civil Code article 2315 because the statements at issue are substantially true, privileged, and/or constitute protected opinion. *See Costello v. Hardy*, 864 So. 2d 129 (La. 2004) (setting forth the four elements of defamation under Louisiana law, including fault).

7. **Absolute Privilege.** Statements made by Dr. Yiannopoulos in connection with the NOPD police report, the FBI criminal referral, and the Petition for Protective Order are absolutely privileged as statements made before or in connection with law enforcement and judicial proceedings. *Wainwright v. Fontenot*, 774 So. 2d 70, 74 (La. 2000).

8. **Qualified Privilege.** Communications to AAR leadership and the University of Chicago made in connection with pending judicial proceedings were made in good faith, on a subject matter in which the communicator had an interest, to persons having a corresponding interest or duty. *See Toomer v. Breaux*, 146 So. 2d 723 (La.

11

App. 3d Cir. 1962); *Trentecosta v. Beck*, 703 So. 2d 552 (La. 1997).

9. **Fair Comment and Opinion.**    The characterizations identified in the Counterclaim—including "predator" and "unstable"—constitute protected opinion based on disclosed facts under the First Amendment to the United States Constitution. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990).

10. **Limited-Purpose Public Figure / Actual Malice.** Counterclaimant is a limited-purpose public figure in the field of Buddhist philosophy. He must therefore demonstrate that Dr. Yiannopoulos published defamatory statements with actual malice—knowledge that they were false or reckless disregard of whether they were true or false. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Counterclaimant cannot make this showing.

11. **First Amendment / Right to Petition.** Dr. Yiannopoulos's communications to law enforcement (NOPD, UCPD, FBI) and to the Orleans Parish Civil District Court constitute protected exercises of the right to petition government for redress of grievances under the First Amendment. These communications cannot form the basis of a defamation claim unless the underlying petitioning activity was objectively baseless. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993). Given that Dr. Yiannopoulos obtained a judicial order (Document 5-1, Pages 71–76) on the strength of his petition, it was not baseless.

12. **Good Faith.** Dr. Yiannopoulos's communications were made in good faith, based on documented facts and the reasonable belief that the statements were true. Good faith negates actual malice.

13. **Failure to Mitigate.** Counterclaimant's claims for damages are barred or should

12

be reduced to the extent that Counterclaimant failed to take reasonable steps to mitigate his alleged injuries.

14.  **Judicial Estoppel.** To the extent Counterclaimant's verified pleading statements—including the categorical denial at Paragraph 16 that he "does not have and has never had a Twitter or X account"—are contradicted by evidence obtained in discovery, Counterclaimant is judicially estopped from withdrawing or modifying those statements. *See New Hampshire v. Maine*, 532 U.S. 742 (2001).

15.  **Louisiana Citizens Participation in Government Act.** Counterclaim-Defendant reserves the right to file a special motion to strike under Louisiana Code of Civil Procedure article 971, and to seek attorney's fees, costs, and compensatory damages as provided therein, on the grounds that Counterclaimant's claims arise from Counterclaim-Defendant's exercise of his right of free speech and right to petition government in connection with a public issue.

16.  **Reservation of Rights.** Counterclaim-Defendant expressly reserves the right to amend this Answer and his Defenses as permitted by the Federal Rules of Civil Procedure and the Rules and Orders of this Court.

## PRAYER

WHEREFORE, having answered Counterclaimant Daniel Arnold's Counterclaim and asserted his defenses, Counterclaim-Defendant respectfully requests that this Honorable Court:

(a)  Dismiss the Counterclaim in its entirety, with prejudice;

(b)  Enter judgment in favor of Plaintiff Dr. Yiannopoulos on his claims in the First

Amended Complaint;

(c)    Award Dr. Yiannopoulos all equitable and monetary relief requested;

(d)    Award costs and attorneys' fees; and

(e)    Grant such other and further relief as this Court deems just and proper.

14

# EXHIBITS

The following exhibits are attached hereto and incorporated by reference:

- **Exhibit A**: NOPD Incident Report No. K-16401-25 (November 18, 2025)

- **Exhibit B**: FedEx Office Order Confirmation—FBI Criminal Referral (Order No. 2010482364112454)

- **Exhibit C**: FedEx Proof of Delivery—FBI Detroit Field Office (Tracking No. 394103555817, delivered October 14, 2025)

- **Exhibit D**: FBI Electronic Tip Form—Submission Confirmation (tips.fbi.gov)

Respectfully submitted,

Alexander Yiannopoulos

Plaintiff, Pro Se

3724 Laurel Street

New Orleans, Louisiana 70115

Telephone: (504) 318-1279

Email: ayiannopoulos@protonmail.com

March 24, 2026

15